IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JENNIFER GATKE, | ) | Civil No.: 3:12-cv-00645-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

    James S. Coon
    Swanson Thomas & Coon & Newton
    820 SW 2nd Avenue, Suite 200
    Portland, OR 97204

        Attorney for Plaintiff


    S. Amanda Marshall, U.S. Attorney
    Adrian L. Brown, Asst. U.S. Attorney
    1000 S.W. 3rd Avenue, Suite 600
    Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

    Gerald J. Hill
    Social Security Administration
    Office of the General Counsel
    701 Fifth Avenue, Suite 2900, M/S 221A
    Seattle, WA 98104

     Attorneys for Defendant

JELDERKS, Magistrate Judge:

  Plaintiff Jennifer Gatke brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Disability Insurance Benefits (DIB) under the Social Security Act (the Act). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits.

  For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

  Plaintiff filed the pending application for DIB on April 3, 2008, alleging that she had been disabled since September 15, 2005 because of low back arthritis, bladder and uterus pain, irritable bowel syndrome, sciatica, and bursitis.

  After her claims had been denied initially and on reconsideration, Plaintiff timely requested an administrative hearing.

  On October 14, 2010, a hearing was held before Administrative Law Judge (ALJ) John Madden, Jr.. Plaintiff and Kay Wise, a Vocational Expert (VE), testified at the hearing.

  In a decision filed on October 22, 2010, ALJ Madden found that Plaintiff was not disabled within the meaning of the Act. While her request for review of that decision by the Appeals Council was pending, Plaintiff submitted additional evidence, including several hundred pages of treatment records and a letter dated October 24, 2011, from Dr. Miles Seeley,

FINDINGS AND RECOMMENDATION - 2

who had been her treating gynecologist. The Appeals Council made Plaintiff's post-hearing submissions part of the administrative record.

In a decision dated March 21, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born on January 6, 1977, and was 33 years old at the time of the ALJ's decision. She graduated from high school and attended college for six months. Plaintiff has past relevant work experience as a Cashier, Telephone Sales Representative, Retail Salesperson, and Photographer Helper. She has not worked since 2005, and her insured status expired on December 31, 2007.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant

has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant. <u>Tackett</u>, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id.</u>

## **Medical Record**

Plaintiff has experienced pelvic pain, back pain, and migraine headaches, and has undergone several surgeries, including a hysterectomy and oophorectomy.

I will not separately summarize the medical record here.  Instead, like the parties, I will address the medical evidence only as it relates to the issues Plaintiff has raised.

## **ALJ's Decision**

The ALJ found that Plaintiff last met the requirements for insured status under the Act on December 31, 2007.

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability on September 15, 2007.

At the second step, the ALJ found that Plaintiff had the following severe impairments: L5-S1 disc bulge; status post abdominal surgery pain; and pelvic pain.                            .

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

The ALJ next found that Plaintiff's residual functional capacity (RFC) would allow her to perform light exertional level work, except that she could not tolerate even moderate exposure to hazards, including dangerous or moving machinery and unprotected heights.  He found that Plaintiff's  statements concerning her functional limitations were not credible to the extent they were inconsistent with that assessment.

Based upon the testimony of the VE, at the fourth step, the ALJ found that Plaintiff could perform her past relevant work as a Cashier and Telephone Sales Representative as those jobs were generally performed in the national economy.

Based upon the testimony of the VE, the ALJ also alternatively found, at the fifth step, that Plaintiff could perform other work that existed in significant numbers in the national economy. He cited Credit Charge Clerk, Cashier II, and Office Helper positions as examples of such work. Based upon his finding at step four and alternative finding at step five, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Claimants bear the initial burden of establishing disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or

detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that Dr. Seeley's post-hearing opinion "demonstrates that the ALJ's opinion is not supported by substantial evidence."  She contends that the ALJ further erred in rejecting lay witness statements from Karl Gatke, Plaintiff's husband; and Steven Gatke and Diane Gatke, Plaintiff's father-in-law and mother-in-law.  Plaintiff also argues that the ALJ erred in failing to consider the impact of her prescribed narcotic pain medication on her concentration, persistence, and pace.

1. **Sufficiency of ALJ's Medical Analysis in Light of Material Plaintiff Submitted Post-Hearing**

Plaintiff had multiple treating doctors during the time relevant to the decision at issue here.  Miles Seeley, M.D., was Plaintiff's treating gynecologist/obstetrician from 2000 to 2007.  Plaintiff asserts that Dr. Seeley was "retired and unavailable" at the time of her hearing, and that her counsel was only able to locate him and obtain his medical opinion during the year following the hearing.

Dr. Seeley's opinion is set out in a letter dated October 24, 2011, which Plaintiff submitted to the Appeals Council while her request for review was pending.  In his letter, Dr. Seeley asserted that, because Plaintiff's gynecological issues "dominated her health" during the time he treated her, he had "coordinated her care among" doctors to whom he referred her for treatment.  Dr. Seeley recounted Plaintiff's treatment history between 2000 and 2007, and noted that Plaintiff had suffered from pelvic pain related to severe endometriosis, with possible

interstitial cystitis. Dr. Seeley stated that

> From at least January 2000, when I first saw Ms. Gatke, through July 2004, when I performed a hysterectomy on her, she experienced chronic debilitating pelvic pain, caused by Stage III endometriosis. During her frequent calls to my advice nurse and visits with me, Ms. Gatke consistently reported pelvic pain, often beyond the relief provided by the various pain medications prescribed for her. She also reported anxiety and migraine headaches accompanied by vomiting . Her symptoms were consistent with the severity of her endometriosis.

He added that:

> There is objective medical evidence of Ms. Gatke's severe endometreosis and her reported symptoms of persistent and debilitating pelvic pain have been consistent with that diagnosis. I have never seen any evidence of malingering or exaggeration of symptoms by her and I believe she is fully credible.

As noted above, the Appeals Council made Dr. Seeley's letter and additional treatment records part of the administrative record, and denied Plaintiff's request for review without further reference to these post-hearing materials.

Plaintiff asserts that the ALJ had based his conclusion that she was not wholly credible and had rejected the statements of third-party lay witnesses in part on the absence of objective medical evidence supporting Plaintiff's "allegations of persistent and debilitating pelvic symptoms." She contends the ALJ's conclusions lacked substantial support in the record in light of Dr. Seeley's assertions that he had never seen evidence of malingering or exaggeration of symptoms, and that her reported symptoms were consistent with objective medical evidence of severe endometriosis. Plaintiff contends that consideration of Dr. Seeley's opinion requires that the ALJ's decision be reversed and that this action be remanded for an award of benefits.

As Plaintiff correctly notes, because treating physicians have a greater opportunity to know and observe the patient, their opinions are generally given greater weight than the opinions of other medical experts. E.g., Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). An

ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting a treating physician's uncontroverted opinions, Lester v. Chater, 81 F.2d 821, 830-31 (9th Cir. 1995), and must provide "specific, legitimate reasons . . . based upon substantial evidence in the record" for rejecting opinions of a treating physician which are contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).  However, an ALJ is not required to find a treating physician's opinions as to a claimant's physical condition or the ultimate question of disability conclusive, Morgan v. Commissioner, 169 F.3d 595, 600 (9th Cir. 2009), and a court reviewing an ALJ's decision does not assume the role of fact-finder, but instead determines whether the findings are supported by substantial evidence in light of the record as a whole.  Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

Plaintiff also correctly notes that where, as here, the Appeals Council considers new material submitted after the ALJ issued a decision, that material becomes part of the administrative record which the district court must consider in determining whether the final decision is supported by substantial evidence.  Brewes v. Commissioner, 682 F.3d 1157, 1162-63 (9th Cir. 2012) (citing Ramirez v. Shalala, 8 F.3d 1444, 1451-52 (9th Cir. 1993); Lingenfelter v. Astrue, 504 F.3d 1028, 1030 n. 2 (9th Cir. 2007); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000)).  Accordingly, in determining whether the decision denying Plaintiff's application for benefits is supported by substantial evidence, I must consider Dr. Seeley's post-decision evaluation along with the other material in the administrative record.  The question here is therefore whether, having considered an administrative record that includes Dr. Seeley's opinions, the district court should affirm the Commissioner's decision, remand the action for an award of benefits, or remand the action for further proceedings.

Based upon a careful review of the ALJ's decision and the relevant portions of the

expanded post-hearing administrative record, including Dr. Seeley's letter, I conclude that the decision denying Plaintiff's application for benefits is supported by substantial evidence. The question before the ALJ was whether the record established that Plaintiff was disabled at any time between Plaintiff's alleged onset of disability on September 15, 2005, and the expiration of her insured status on December 31, 2007. These dates are significant, because Dr. Seeley opined that Plaintiff had experienced "chronic debilitating pelvic pain" which was "consistent with the severity of her endometriosis" from January, 2000, until he performed a hysterectomy in July, 2004. The Commissioner correctly notes that Plaintiff told Dr. Seeley that her pain improved, but did not completely resolve, in 2004 and 2005, and told Dr. Brad Lorber that, although her pain had persisted, the hysterectomy Dr. Seeley performed in 2004 had been "a huge help."

    Dr. Seeley's opinion does not undermine the evidence that the ALJ cited in his decision, or the validity of his conclusion that Plaintiff was not disabled during the relevant period. Dr. Seeley did discuss evidence that Plaintiff had continued to experience some pelvic pain even after he performed a hysterectomy in 2004. However, as the Commissioner correctly notes, the ALJ accepted that Plaintiff had ongoing pain following her abdominal surgeries, and cited substantial evidence supporting his conclusion that her impairments were not disabling during the relevant period. The ALJ fully supported his conclusion that Plaintiff's description of her symptoms and impairments was not wholly credible, and Plaintiff has not challenged his assessment of her credibility. Dr. Seeley's assertion that Plaintiff was credible in her dealings with him does not undermine the ALJ's reasoning or negate the weight of the substantial evidence he cited supporting his credibility determination.

FINDINGS AND RECOMMENDATION - 10

In her opening memorandum, Plaintiff asserts that the ALJ accepted the opinions of the non-examining state agency physicians because the record before him was "deficient" because it did not include the opinions of any treating physician. Plaintiff's Opening Brief at 5. She contends that the submission of Dr. Seeley's opinion "remedies this deficiency," and requires that the action now be remanded for an award of benefits. Id. at 5-6. In her reply memorandum, Plaintiff asserts that consideration of Dr. Seeley's "supportive medical opinion" requires remand because Dr. Seeley is "the only medical source who treated or examined plaintiff during the relevant time period . . . ." Plaintiff's Reply Brief at 3.

The first of these contentions fails because the ALJ did not state or imply that the medical record was "deficient." Instead, he noted that Dr. Hennings, a non-examining doctor, had opined that there was "insufficient evidence to establish any severe mental impairment prior to claimant's date last insured," TR 32, and nothing in Dr. Seeley's opinion undermines that assertion. The second contention fails because Dr. Seeley was not the only doctor who treated or examined Plaintiff during the relevant period, and the ALJ cited the records of a number of other doctors who treated or examined Plaintiff during that time.

The ALJ cited substantial evidence in the record supporting his conclusion that Plaintiff was not disabled during the relevant period. Consideration of Dr. Seeley's post-hearing letter and records neither undermines the validity of that evidence nor supports the conclusion that the ALJ's denial of Plaintiff's application for benefits reflected legal error.

2. **Rejection of Lay Witness Testimony**

Karl Gatke, Plaintiff's husband, completed a Third-Party Function Report describing Plaintiff's limitations and activities as follows: Plaintiff cannot walk more than three blocks, lift

her children, be in an automobile for more than 45 minutes, or sleep through the night. She forgets to take some medications because of the side effects of other medications, and remembers to feed herself only if she is not suffering side effects of her medication. Plaintiff no longer goes grocery shopping, and cannot do any chores without assistance. Though she honestly tries, it takes Plaintiff ten times as long as a normal person to do the same chores. Plaintiff needs to lie down for 2 to 4 hours after she does chores, and is easily distracted and almost never finishes what she starts. She forgets to pay bills and "bounces the checking account by hundreds of dollars every two weeks." Plaintiff can lift 5 to 10 pounds, stand for 5 to 10 minutes, and sit for 5 to 10 minutes.

Plaintiff's mother-in-law and father-in-law submitted a letter stating that they often care for their grandchildren on the weekends so Plaintiff can rest and take all of her pain medications, which she will not do when she is caring for the children alone because she is concerned about the effects of medication on her lucidity and ability to stay awake and focused. These witnesses stated that Plaintiff has struggled with appendicitis, endometriosis, intestinal disorders, and neck and back pain, and reported that a 50 minute automobile drive is very painful for her.

The ALJ observed that Karl Gatke's statements "generally echo[ed]" Plaintiff's description of her symptoms and "alleged functional deficits." He asserted that Karl Gatke's statements "might be descriptive" of his "perception," but concluded that they were "inconsistent with the objective medical record" and were "generally not credible." The ALJ asserted that Plaintiff's mother-in-law and father-in-law's statement "reiterates" Plaintiff's own allegations. He concluded that their observations "may be descriptive of their impression," but were inconsistent with the objective medical evidence, and "generally not credible."

Plaintiff asserts that the medical record that the ALJ cited in discrediting the third-party witnesses was substantially different than the post-hearing record which included Dr. Seeley's opinion. She contends that the ALJ did not provide legally sufficient reasons for discounting the statements of the lay witnesses .

Lay testimony describing a claimant's apparent symptoms and activities is competent evidence which an ALJ must consider, e.g., Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) (citing Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1995), and an ALJ must provide "germane" reasons for rejecting such evidence. Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ's reasons for discounting the third-party statements in question here met that standard. In his discussion of the medical record, the ALJ cited substantial medical evidence supporting the conclusions that Plaintiff retained the functional capacity required to perform work identified in his decision, and that Plaintiff's own description of her symptoms and limitations was inconsistent with the medical record. The ALJ correctly observed that the lay witnesses' statements were consistent with Plaintiff's allegations and inconsistent with the medical evidence.

Inconsistency with the objective medical evidence is a legitimate basis for discounting lay witness testimony. Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005); (citing Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001)). In addition, where a third party witness testifies to the same limits testified to by the claimant, and the claimant's testimony is properly discounted, the reasons for discrediting the claimant's testimony also apply to a third party witness's testimony. Molina v. Asture, 679 F.3d 1109, 1122 (9th Cir. 2012); James v. Astrue, 2012 WL 1309166 at *5 (D. Or., April 12, 2012) (citing id.; Valentine v. Commissioner, 574 F.3d 685, 694 (9th Cir. 2009)

(where ALJ has properly discounted claimant's credibility, failure to reassess third party witness statement as to same limitations not error).  The ALJ provided ample reasons for discounting Plaintiff's own credibility.  His assessment of the credibility of lay witness statements was adequate, even in light of Dr. Seeley's post-hearing letter.

3. **Adequacy of ALJ's RFC Assessment and Vocational Hypothetical**

In order to be accurate, an ALJ's hypothetical to a VE must set out all of a claimant's limitations.  Thomas v. Barnhart, 278 F.3d 947, 956 (9th Cir. 1995).  A VE's opinion that a claimant can work lacks evidentiary value if the assumptions upon which the hypothetical is based are not supported by the record.  Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).

Plaintiff contends that the vocational hypothetical that the ALJ posed to the VE did not include all of her limitations, and failed to accurately account for limitations in her concentration, persistence, and pace.

This contention fails.  As the Commissioner correctly notes, the ALJ accounted for the side effects of Plaintiff's pain medication by precluding work around hazards, and Plaintiff herself consistently denied side effects, including sedation, of narcotic medication at the dosages prescribed during the relevant period.  The ALJ supported his RFC assessment with substantial evidence in the record, and his RFC evaluation was  reasonable.  Plaintiff has not shown that the ALJ's vocational hypothetical failed to adequately account for the side effects of her pain medications.

**Conclusion**

A Judgment should be entered AFFIRMING the Commissioner's decision and DISMISSING this action with prejudice.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due April 15, 2013. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 28th day of March, 2013.

        /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge